James McLENAGHAN, Administrator of
the Estate of James Murray,
Plaintiff,

v.

Robert BILLOW, Wyoming, Delaware,
Defendant.

Civ. A. No. 1922.

United States District Court
D. Delaware.

April 30, 1958.

Maurice A. Hartnett, III, Dover, Del., Benjamin Pomerantz, Philadelphia, Pa., for plaintiff.

William Prickett, Wilmington, Del., for defendant.

LAYTON, District Judge.

This is a diversity action in which the law of Delaware is controlling. The uncontroverted facts appearing from the depositions, affidavits, photographs and record of a coroner's inquest, which was made a part of the record, are as follows:

On the night of February 15, 1957, at approximately 11:20 p. m., decedent (Murray) and a Miss Weller were walking in the northbound lane of Route 190, outside the city limits of Dover, Delaware.[1] Miss Weller was on the outside edge of the macadam road and Murray was to her left nearer the center of the road. The road was 18 ft. wide and the two took up approximately one-half of the northbound lane of the highway. Miss Weller had on a light colored coat but Murray's was darkish in color. The night was absolutely clear and dry. The dirt shoulders were four or five feet wide and, insofar as can be gathered from the description of the weather and from photographs, were dry. The defendant was proceeding north in his automobile, going to work on a night shift in a Dover plant. He was proceeding at not more, and probably less, than the speed limit.[2] A car was approaching from the opposite direction with its lights on dim.[3] Just as the two cars passed, defendant noticed something white ahead (probably Miss Weller's coat), turned sharply to the left and jammed on his brakes. Then, almost simultaneously, the dark clad figure of Murray appeared in his lights beside Miss Weller but defendant was unable to avoid skidding into him and striking him with his right fender with the result that Murray was killed.

Even prior to the passage of the statutes hereafter discussed, the common law right of a pedestrian to walk on the highways of Delaware was qualified by his duty to exercise due care for his own safety. Simeone v. Lindsay, 6 Pennewill, Del., 224, 65 A. 778; Grier v. Samuel, 4 Boyce 106, 111, 27 Del. 106, 111, 86 A. 209. However, well prior to this accident, 21 Del.C. § 4174(a) and 21 Del.C. § 4175(a) had been passed by the Legislature. The former prohibits a pedestrian from walking at any time on the paved area of any highway (outside city

---

1. Apparently, the car in which they were riding had broken down and after parking it off on the shoulder of the highway, they proceeded to walk into Dover which was no great distance.

2. A State Trooper testified at the inquest that from his examination of the road just after the accident, including the length of defendant's skid marks, he (defendant) was traveling at not more than 35 M.P.H. at the time.

3. At the inquest, defendant testified this approaching car had its dimmers on. On his deposition, however, at which he was fully examined by counsel for both sides, he stated that he had his bright driving lights on, the approaching car had its dimmers on but suddenly threw its bright lights on, momentarily blinding him; that they both then dimmed their lights and passed, at which moment defendant first noticed Miss Weller's white coat. Defendant's counsel objected to the introduction of the record of the inquest taken by a magistrate's stenographer, untrained in court reporting. It is entirely possible that she omitted part of defendant's testimony on this subject. However, I decline to rule out the record of the inquest and adopt the version as to the lights contained in the record of the inquest which is least favorable to defendant. Inasmuch as this evidence relates to the negligence of the defendant, as will later appear, the result in law would be the same under either version of the facts. In fairness to the defendant, it may be stated that his testimony on deposition about the lights of the approaching car suddenly being turned on bright, momentarily blinding him, is not just an afterthought, for a State Trooper at the inquest referred to it as forming a part of defendant's original statement to the police at the time of the accident.

limits) except when facing oncoming traffic. The latter requires pedestrians on highways to carry a white light or white reflector at night. Neither the decedent nor Miss Weller was carrying a white light or a white reflector. Since the deceased was violating both the cited Sections at the time of the accident, he was plainly guilty of contributory negligence making this a clear case for summary judgment unless defendant's negligence, if any there was, intervened and became the effective cause of the accident under the last clear chance doctrine. Before deciding this question, I shall dispose of several other contentions urged by the plaintiff as to why summary judgment should be denied.

First, plaintiff contends that the deposition of Miss Weller must be suppressed because defendant's counsel asked her some leading questions. There seems to be little difference of opinion as to the facts forming the subject matter of these questions. In such cases, experienced trial counsel (as was defendant's counsel) will frequently lead a witness until he gets to contraverted ground. There can be no real objection to such a practice. The first question to which an objection was made was this:

"Q. The night itself was a darkish night, was it not?

"Mr. Pomerantz: I object to this.

"A. I think the moon was shining but I don't think it was a particularly, shall I say, particularly bright night."

Inasmuch as the witness did not completely agree with the suggestion in the question, no possible prejudice resulted.

The next interchange was this:

"Q. The Billow car did not touch you, did it? A. No sir.

"Q. But it did hit Mr. Murray? A. Yes, sir.

"Mr. Pomerantz: I am going to object to this entire line of questioning in view of the fact that Mr.

Prickett * * * is leading the witness. * * *."

By Mr. Prickett:

"Q. Did or did not the Billow car hit Mr. Murray? A. Yes, it did."

My reaction to this objection is that every one, including plaintiff, knew the Billow car hit deceased. Defendant's answer admitted it. Plaintiff's case depended on the fact. What possible prejudice, therefore, could have resulted from the leading nature of the question? Moreover, it was cured by the subsequent question and answer. Several other leading questions were not objected to. In this connection, Prof. Moore, 4 Moore's Federal Practice, pp. 2202, 2203, observes:

"Although objections are duly made to errors or irregularities specified in Rule 32 [28 U.S.C.A.], they must be substantial and really affect the value of the deposition as evidence before they can be held to preclude the use of the deposition in whole or in part at the trial."

My conclusion is that plaintiff's first contention is wholly without merit.

Next, plaintiff complains that there are genuine issues as to relevant facts. At the argument, plaintiff's counsel was unable to point to any such issues and having carefully read all the papers, I find none which are material. The fact is, either the plaintiff has not been altogether candid in his treatment of the facts or he has confused issues of fact with assumptions or possibilities receiving no support from the record. For instance, he states in his brief that plaintiff and Miss Weller were originally walking facing oncoming traffic but had to cross the road prior to the accident due to factors beyond their control. There is no evidence to support this assertion beyond the fact that there was a car approaching from the north. Plaintiff had full opportunity to examine Miss Weller on this point but deliberately did not do so. It may be added that even if the southbound car forced them to change

their course, which is pure speculation, they could have easily stepped off on the shoulder to their left instead of violating the statute by crossing the road and walking with traffic coming from their back. The plaintiff has also stated on his brief that the deceased's car became mired on the shoulder of the road. The inference from this is that the deceased and Miss Weller had to walk on the macadam because of the condition of the shoulders. There is absolutely no evidence in the record to support this statement. Again, plaintiff asserts in his brief that when defendant "threw his lights down he negligently turned them off." This is a completely erroneous statement. It had to do with the driver of the southbound car, not the defendant. Moreover, it is a matter of common knowledge that when a driver dims his lights, he does it with a small pedal by his left foot. To turn off the lights, one must reach over to the dashboard and do so by hand. This whole subject arose from the following statement given by the defendant at the inquest. "I had my high lights on and he had his dims on. He threw his down." I have already observed that an untrained person took this testimony. It is probably unreliable. I think it likely that a whole sentence was omitted by the stenographer just before "He threw his down." This sentence probably was this: "Suddenly he threw on his bright lights momentarily blinding me and I dimmed my lights." Then would follow the sentence, "He threw his down." This would make sense. It makes no sense at all for a person deliberately to reach over and throw off his lights entirely by hand. However this may be, this episode had to do with the driver of the approaching car, not this defendant.

Running through plaintiff's argument, also, is the suggestion or inference that all the facts surrounding the case had not been developed and, in fairness, defendant's motion should not be granted until the facts were known. Again, the contention is groundless. Both witnesses to the accident were examined on deposition. Police who appeared very shortly after the accident gave affidavits, and pictures taken by them within a short time of the accident also comprised part of the moving papers as did the transcript of the coroner's inquest. The fact is, that if anything about the accident was not known, it was plaintiff's fault, for although he examined and reexamined defendant at great length, he deliberately did not cross-examine Miss Weller. As to this, he took refuge in the position that it was not his duty to see that all the facts were brought out, a contention I have never before heard urged on a motion for summary judgment.

■ There remains the question concerning the applicability of the last clear chance doctrine. The plaintiff relies on Baker v. Reid, 5 Terry 112, 44 Del. 112, 57 A.2d 103, 107, as authority for his contention. In the Reid case, the decedent stopped his car partly on the highway to change a flat tire. The car was between him and the shoulder of the road, thus placing him in a position of helpless peril. The defendant, although he saw the decedent's car as much as 500 ft. distant, neither realized it was partially on the highway nor did he see defendant until he was 15 ft. away.

The Supreme Court of Delaware said:

"We think the evidence sufficient to justify conclusions that defendant observed or should have observed the dangerous situation of decedent, and failed to take available and reasonable measures to avoid hitting him during a period when decedent's way of escape from the danger was prevented because of his position with relation to the automobile which extended at an angle on the road."

But, here, deceased was not in a position of helpless peril in the sense that decedent was in the Reid case. There was no obstacle such as an automobile blocking his safety. He could have stepped off the highway at any moment. Be that as it may, in Lord v. Poore, 9

Terry 595, 48 Del. 595, 108 A.2d 366, 369, the latest pronouncement on this subject, the State Supreme Court both criticized and restricted the holding in the Reid case in this language:

"The modern view is that the doctrine of last clear chance is simply an exception to the rule that contributory negligence bars recovery. It is applied, first, to the case of a plaintiff who has negligently placed himself in a position of helpless peril, that is, a position from which he is unable physically to extricate himself just before the accident. In such a case the defendant is liable if either he saw the plaintiff or by the exercise of reasonable care could have seen him. It is applied, second, to the case of a negligently inattentive plaintiff, that is, a plaintiff who has negligently placed himself in a dangerous position, but who is able, at any time before the accident, to extricate himself from his position of peril. But in the latter case it must appear that the defendant actually discovered the plaintiff's position, knew of the plaintiff's situation and had reason to realize that plaintiff was inattentive. * * *

* * * * * *

"This distinction does not seem to be clearly recognized in Baker v. Reid, supra. We agree with the decision in that case since the plaintiff was clearly in a position of helpless peril and the defendant by the exercise of reasonable care could have discovered the plaintiff's situation. But some of its language might be read as permitting recovery by a negligently inattentive plaintiff on the ground that his dangerous position, though not known to the defendant, might have been discovered by the exercise of reasonable care. This is too broad a statement of the rule and the authority of the Baker case should be limited accordingly. In applying our rules of proximate and remote cause recovery should be denied to a negligently inattentive plaintiff unless the evidence shows that defendant knew of plaintiff's situation and had reason to believe that he was inattentive and unlikely to discover his peril in time to avoid harm."

Applying these principles we have "a negligently inattentive plaintiff, that is, a plaintiff who has negligently placed himself in a dangerous position, but who is able, at any time before the accident, to extricate himself from his position of peril." But wholly lacking here are facts from which "it must appear that the defendant actually discovered the plaintiff's position, knew of the plaintiff's situation and had reason to realize that plaintiff was inattentive."[4] In point of fact, it is clear beyond doubt both from defendant's deposition and the skid marks in the photographs that he never saw the deceased until too late to avoid hitting him. My conclusion is that defendant cannot under the law of Delaware be said to have had a last clear chance to avert the accident. Disabatino & Raniere, Inc., v. Gilmore, 1951, 7 Terry 323, 46 Del. 323, 83 A.2d 695.

The motion for summary judgment is granted.[5]

---

4. If the car approaching from the north did, in fact, turn on its bright lights thus suddenly blinding defendant, the doctrine of the last clear chance would not be applicable because plaintiff would be unable to point to any negligence on defendant's part. If, as elsewhere concluded for the purposes of this motion, the car's lights remained on dim, then, assuming arguendo that defendant was guilty of negligence in not seeing that which he should have seen, the doctrine of the Poore case would still preclude recovery because all the testimony points to the fact that defendant never actually saw Miss Weller until too late to avoid hitting the deceased.

5. The formal Order granting this motion was signed and filed on April 21, 1958.